## VOM BAUR v. UNITED STATES.

### (Circuit Court, S. D. New York.   June 1, 1905.)

### No. 3,640.

CUSTOMS DUTIES—CLASSIFICATION—FEATHERSTITCH BRAIDS.

Featherstitch braids, so called, which are not produced by braiding, but by a process of weaving, but which are known commercially as braids, are within the provision for "braids" in paragraph 339, Schedule J, § 1, c. 11, Tariff Act July 24, 1897, 30 Stat. 181 [U. S. Comp. St. 1901, p. 1662].

On Application for Review of a Decision of the Board of United States General Appraisers.

The decision here reviewed, which is known as G. A. 5,744, T. D. 25,480, affirmed the assessment of duty by the collector of customs at the port of New York on merchandise imported by C. M. Vom Baur. The opinion filed by the Board of General Appraisers reads as follows:

HOWELL, General Appraiser.   The goods covered by the protests are described in the invoices as "featherstitch braids."   They consist of articles ranging variously from about one-fourth to one-half of an inch in width, loom woven, of white or colored threads throughout, or of mixed white and variously colored threads, of cotton or other vegetable fiber, and ornamented with raised figures in various designs, "herringbone" and others, some of which have plain and others scalloped or looped edges.   They were returned by the appraiser as "cotton braids," and were assessed with duty by the collector at the rate of 60 per cent. ad valorem under paragraph 339, Schedule J, § 1, c. 11, Tariff Act July 24, 1897, 30 Stat. 181 [U. S. Comp. St. 1901, p. 1662], the pertinent provision of which is as follows: "Embroideries and all trimmings, including braids, edgings, insertings, flouncings, galloons, gorings, and bands, * * * composed wholly or in chief value of flax, cotton or other vegetable fiber, and not elsewhere specially provided for in this act."

Various claims are made in the protests, but the one relied upon by counsel for the importer is that the articles are dutiable at the rate of 45 per cent. ad valorem under paragraph 320, Schedule I, 30 Stat. 179 [U. S. Comp. St. 1901, p. 1661], as "bindings," or as "tapes * * * made of cotton or other vegetable fiber."   In G. A. 4,326, T. D. 20,515, and G. A. 4,929, T. D. 23,703, the Board held that featherstitch braids were dutiable under paragraph 339, as assessed in this case.   On appeal from the latter decision, the Circuit Court for the Southern District of New York in Steinhardt v. U. S. (C. C.) 121 Fed. 442, reversed the decision of the Board; the opinion of the court (Wheeler, J.) being in part as follows: "The articles in question appear to be narrow, woven tapes of cotton, used largely for covering the seams of underwear and waists.   The Standard Dictionary gives one definition of a "braid" as "a narrow, flat tape or woven strip for binding the edges of fabrics, or for ornamenting them."   If these articles are braids within this or a like definition, they are also bindings or tapes within paragraph 320, and, being provided for there, are otherwise provided for than in 339."   The government did not appeal from that decision, but limited its acquiescence in that ruling to the particular case (T. D. 24,269), and has brought forward this case for the purpose of showing that the articles are commercially known as braids, and were so commercially known at and prior to the passage of the tariff act of July 24, 1897, and therefore dutiable under paragraph 339.   Counsel for the importer contends in his brief that there is no definite, general, and uniform trade designation of these articles by the name of "braids"; that the name "binding" and "tapes" is employed to designate these goods, just as is the name "featherstitch braids"; that they are in fact tapes, having been produced by weaving, instead of being braided; and that they are not within

the language of paragraph 339, or, if primarily within its scope, they are prevented from remaining there because they are "elsewhere specially provided for" in the act.

We think that, in determining the proper classification of these goods, the fact that they are produced by weaving, instead of being braided, is quite immaterial; for the commercial designation must control as against the method of fabrication. In the case of In re Dieckerhoff (C. C.) 54 Fed. 161, involving featherstitch braids similar to these here in question, the government took the position that braids must be braided; but this contention was overruled by the court, and the commercial designation accepted. In the case of U. S. v. Wright & Young (C. C.) reported in T. D. 13,707, the Circuit Court decided that goods commercially known as "tapes" were not dutiable as "braids," although made by being braided. So, in the case of Field v. U. S. (C. C.) 50 Fed. 908, affirmed in U. S. v. Field, 54 Fed. 367, 4 C. C. A. 371, it was held that the method of manufacture was ineffective as against a commercial designation. The goods in that case were made on a lace machine, and had the substantial characteristics of laces, but, not being known commercially as laces, were held not to be dutiable as such. So, too, in the case of Wolff v. U. S. (C. C.) 116 Fed. 1023, it was recently decided that articles commercially known as tapes were dutiable as such, without any reference to the method of fabrication; this evidently being regarded by the court as immaterial.

Two questions, then, remain for determination: First. Were these goods known in the trade and commerce of this country, at and immediately prior to July 24, 1897, as "braids"? Second. If the goods were commercially known as braids at and immediately prior to July 24, 1897, are they dutiable under paragraph 339?

Fourteen witnesses, including the importer were examined in this case, and the testimony taken in the Steinhardt Case, supra, where seven witnesses testified, four of them being the same witnesses who appeared before the Board in the case at bar, was made a part of this record. All of the witnesses testified that one of the terms under which these goods were known is "featherstitch braids," but some of them testified that they were also known under various other names, such as "finishing tape," "herringbone webbing," "seam binding," "cotton binding," "binding tape," "herringbone binding," "finishing braid," "finishing binding," "webbing," "web," "seam coverings," "seam tape," "herringbone," and "featherstitch binding." The goods are labeled "featherstitch braids," as shown by the several exhibits introduced in evidence. Seven of the witnesses produced samples of the importations made by the firms with which they were connected, and with one exception they were labeled "featherstitch braids." We think the testimony of the witnesses, when carefully examined, shows that the articles are commercially known as "featherstitch braids," and that they have been so known since 1890.

Mr. Vom Baur, the importer in this case, testified in part as follows: "Q. During all the time you have known of these goods, please state by what name or names they have been designated in trade in this country. A. In this country they have been named 'featherstitch braids,' as finishing tape, herringbone webbing, as seam binding; that is about all. Q. And do you say that any one of those names would, at all times during which you have dealt in these goods, have designated them commercially? A. Yes, sir. Q. How can the General Appraisers, in passing upon these protests, identify the goods of this character on your invoices? A. As featherstitch braids. Q. That is the usual way in which they are invoiced? A. The usual way. Q. You mean invoiced from abroad? A. Yes, sir. Q. And it is the usual way in which you bill goods to this country when you sell them here? A. Usually. Q. As far as you know, it is the usual way in which they are sold and bought in the retail trade? A. Well, they are bought under different inquiries, as I stated. Q. But I am talking about the usual word, the one that is most commonly employed? A. Yes, sir. Q. In other words, the term 'featherstitch braids' expresses a little more nearly and exactly than any other of the terms you have given us this particular class of goods, does it not? Yes, sir."

Mr. Vom Baur was a witness in the Steinhardt Case, supra, and a portion of his testimony in that case is as follows: "Q. How do you buy and sell generally in your wholesale trade; under what name? A. Featherstitch braid. Q. That is the general name? A. Yes, sir. Mr. Frank E. Stockum, a buyer for the firm of George Borgfeldt·& Co., importers, testified in part as follows: "Q. 'Featherstitch braids' is one of the names under which they are known commercially? A. That's about the idea. Q. Whether or not it is true, when you sell these goods, they are known generally as 'featherstitch braids'? A. They are known as such, but we bill them as bindings. Q. Do you ever bill them as featherstitch braids? A. Well, occasionally. However, the label may read— Q. Whether or not it is true that, generally speaking, you bill them as featherstitch braids? A. Rather. Q. How long have you been handling, with one firm or another, this particular line of goods? A. For probably eight or ten years. Q. During that time has their commercial name been the same? A. Yes, sir. Q. Referring to the label on the goods which you hold in your hand there, is it true that that label stays with the goods until they get into the hands of the retail dealer? A. Yes, sir."

Daniel Weiller, of the firm of Weiller & Sons, importers, who was also a witness in the Steinhardt Case, was asked: "Q. Is there an article commercially known as 'featherstitch braids? A. Yes, sir. Q. You handle such an article? A. Yes, sir. Q. Have been during the time you have been in business? in this manner? A. Yes, sir. Q. That is, as featherstitch braids? A. Yes, sir. Q. That is the name they are usually sold by? A. Well, one of the names. Q. That is the name they are usually sold by, I mean? A. They are sometimes sold by that name. Q. Do you say that is not the name they are usually sold by, then? A. Well, yes; it is the name. Q. Do you know of a name which expresses more exactly this class of articles than the term 'featherstitch braids'? A. No, sir. Q. You have been dealing in these, you say, for 20 years? A. Yes, sir. Q. During that time has the commercial name changed, or has it been the same, do you say? A. The same."

Mr. Adolph Kellar, customhouse clerk for the firm of ·Dieckerhoff, Raffloer & Co., testified that he was familiar with this class of goods, and he was asked: "Q. Do you know of any other term which describes this class of goods any more exactly than 'featherstitch braids'? A. I think the term 'seam binding' is used just as frequently for this class of goods as the term 'featherstitch braids.' Q. I don't think you quite understood the question. Do you know of any other term which describes this class of goods any more exactly than 'featherstitch braids'? A. 'Seam binding.' Q. Do you think that describes it more exactly? A. More explicit; I would call it web finishing tape. Q. Is that term usually employed? A. No; it is not usually employed. Is there any term more usually employed than the term 'featherstitch braid,' that you know of? A. No; that is, 'featherstitch braid' is really a foreign name. When these goods were first made and brought to this country, they were known as finishing tape. 'Featherstitch braid' was given by the foreign manufacturers afterwards."

Mr. Ainsworth J. Hague, of A. J. Hague & Co., importers, testified that the goods were known as "featherstitch braids," as "webbing," as "web," and as "bindings."

Mr. Morris Steinhardt, buyer ·for A. Steinhardt & Bro., testified in both cases. His testimony in the case in court was in part as follows: "Q. Under what trade-name has this been bought and sold since you have been familiar with them? A. They are both bought as seam bindings, and they are bought as featherstitch braids and herringbone. Those are about the principal names. Q. Buy and sell them under those names? A. Bought and sold under those names." And in this case he was asked: "Q. Please state each and every name which, in the usage of the trade in this country prior to 1897, was employed to designate these goods? A. Seam binding, seam coverings, seam tape, herringbone, and featherstitch braid."

The testimony of Philip J. Krackehl, assistant buyer and manager of the notion department of Mills & Gibb, who also testified in the Steinhardt Case, is in part as follows: "Q. Do you know of any term which describes these goods more specifically than the term 'featherstitch braids?' No, sir; I do

not. Q. Now, has the commercial designation or designations of this article (Exhibit G) changed during the time you have been familiar with it? A. No, sir; not that I know of."

Mr. Joseph A. Flaherty, of Joseph A. Flaherty & Sons, manufacturers of wearing apparel, testified that he had been buying and using these goods for 12 years, and in his dealings with both importers and manufacturers no other name than "featherstitch braid" had been employed. He has never even heard them called "finishing tapes" nor "seam binding," but has heard them called "herringbone braid."

Mr. Martin Roman, buyer for the Siegel-Cooper Company, testified in part as follows: "Q. In your dealings with wholesale houses, importers, or jobbers—people from whom you buy—what did you call these articles at and prior to July 24, 1897? A. We called them herringbone at that time. Q. Then that seemed to be the earlier name? A. Than featherstitch braids. Q. Anything else that you remember? A. They were called seam bindings, seam coverings, finishing braids. Q. What was the most usual term you used in orders in buying these? A. Featherstitch braids. Q. Was the term 'herringbone trimming' a term in general use at that time? A. I don't think we ordered them as such. Q. Was the term 'seam binding' a general term as applied to these articles? A. I do not think, in ordering them. Q. You seem to imply that it was a term used in some other way. In what way would the term 'seam binding' be used, or by whom? A. Well, it is used largely by our consumers. Dealing with a consumer, we often get generally their usage. Q. Please state again what was the term used in your dealings with the wholesale trade or jobbing trade, or importers, carefully excluding retail customers. A. Featherstitch braids. Q. Any other term—now still with the wholesale people only? A. I think that was the most general. I think that was general."

Mr. John Edwards, a buyer for the Simpson-Crawford Company, testified that he had been handling these goods for 17 years, and that the only names he had ever heard applied to them were "featherstitch braid" and "herringbone trimming."

Mr. Frederick Mossbach, connected with the firm of Bloomingdale Bros., testified in part as follows: "Q. How long have you been dealing in articles like these samples? A. About 18 years. Q. Have you bought them in New York? A. We bought some, and we imported some ourselves, but recently we haven't imported any. Q. You bought them from importers and wholesale dealers, have you? A. Yes, in the last 10 or 12 years. Q. Did you buy any from importers and wholesale dealers prior to July 24, 1897? A. Yes, sir. Q. At that date, and before that, and in dealings with wholesale dealers only, what was the name or names generally applied to articles like that? A. Featherstitch braid and herringbone braid. Q. Is that all? A. That is all that I remember. Q. Will you give us the names of some people you bought those from prior to 1897? A. C. M. Vom Baur, B. Ullmann & Co., Dieckerhoff, Raffloer & Co., Edelhoff & Rinke, A. J. Hague & Co. and Dreyfuss, Weyler & Co., and there may be one or two others that I can't recall. Q. In your dealings with those people, in orders sent to them, correspondence with them, if you had any, what was the name that was used as applied to these goods? A. Featherstitch braid. Q. Can you state positively that in orders that you sent to the houses you have named, you called for featherstitch braid? A. I can. Q. Did you ever use any other term in orders? A. May have called them herringbone braid, but not recently. Q. Did you ever use any other name than those two, in orders? A. No, sir."

Mr. Charles S. King, general manager of the Sanford Narrow Fabric Company, of Pawtucket, R. I., manufacturers of featherstitch braids, testified that in his experience no other name than "featherstitch braid" had been applied to these goods.

The testimony of Mr. Percy Gardner, salesman for this company, is to the same effect; and it is further shown by the testimony of Mr. King and Mr. Gardner that they have sold these goods to Weiller & Son, Mills & Gibb, A. J. Hague & Co., Steinhardt & Bro., Dieckerhoff, Raffloer & Co. and others. Their testimony is substantiated by letters admitted in evidence, which were written

in the usual course of business, wherein the goods are designated as "featherstitch braids."

It is also shown by the testimony that prior to 1897 several of the importing firms, whose representatives have testified in this case, when ordering goods like these in question, of the Sanford Narrow Fabric Company, directed that they should be labeled "featherstitch braids." It is further shown that the goods are designated as "featherstitch braids" in advertisements in trade papers.

We have briefly reviewed the testimony of all the witnesses examined by the Board, except that of Mr. George J. Heaphy, buyer of notions for the firm of Lord & Taylor, whose testimony is of little value because of his limited experience in dealing in these articles prior to July 24, 1897. Three witnesses testified in the Steinhardt Case who were not called in this case. They were Mr. Frank Ganong, lace buyer for A. J. Hague & Co., who testified that the goods were known under the names "binding" and "seam binding"; Mr. John H. Connell, of H. B. Claflin & Co., who testified that the goods were generally designated as "featherstitch braid" or "seam bindings"; and Mr. Henry Kleinschmidt, salesman for Mr. C. M. Vom Baur, who stated that the goods were known as "seam binding," as "featherstitch braids," as "herringbone," and as "webbing." This examination of the testimony discloses the absence of the use of any general name for these goods in the trade except 'featherstitch braids." All the witnesses are agreed, however, that the goods are known as "featherstitch braids," and we think the other names are subordinate to this general trade-name, and should not be given an "undue importance" for the purpose of changing the tariff classification of the goods. In re H. B. Claflin & Company, 52 Fed. 121, 2 C. C. A. 647.

It is important to note that the witnesses testify that there has been no change in the commercial designation of these articles for the past 10 to 15 years, for in 1892 it was proved by the testimony of numerous importers that these goods were commercially known as "featherstitch braids," and the United States Circuit Court found them to be so commercially known in the case of In re Dieckerhoff, supra. In the statement of the case as reported, we find: "The importers * * * produced the testimony of a number of trade witnesses before the said Board, from whose evidence it appeared that the merchandise was known in trade and commerce at and immediately prior to October 1, 1890, as 'featherstitch braids,' and that the articles were not known as 'trimmings,' or included within the line of goods of that character. It also appeared that the braids were sometimes made on looms and sometimes on braiding machines, but that by far the greater proportion was made on looms."

On this record we find, as matter of fact: (1) That the goods in question were generally known in the wholesale trade of the United States, at and prior to July 24, 1897, as "featherstitch braids." (2) That the term "featherstitch braids" was the only general commercial name under which the goods were known in the trade and commerce of this country at and immediately prior to July 24, 1897, and that the terms "seam bindings," "finishing tapes," and others are subordinate names which have not been generally employed to designate these goods. In view of these findings, we think the case is distinguished from the Steinhardt Case, supra. That case only decided that, if the articles were braids within the lexicographical definitions, they were also bindings or tapes, and were therefore more specifically provided for in paragraph 339. There was no satisfactory testimony in the case as to the commercial designation of the articles, whereas it has now been shown by competent testimony that they are generally known in the commerce of this country as "braids," and not as "tapes" or "bindings."

The Circuit Court of Appeals, in Hiller v. U. S., 106 Fed. 73, 45 C. C. A. 229, decided that cotton braids of all classes are included within the scope of paragraph 339. The decision of the court is in part as follows: "A comparison of the provisions of the cotton schedules in the acts of 1894 and 1897 in regard to the classification of braids is, however, quite significant of the intent of Congress. Paragraph 263 of the act of 1894 (28 Stat. 529), which corresponded to paragraph 320 of the act of 1897, imposed a duty of 45 per

cent. upon cords, braids, etc., made of cotton; but braids are omitted in. paragraph 320 of the new act, which imposes the same duty. Paragraph 276: of the act of 1894 (28 Stat. 530), which corresponded to paragraph 339 of the new act, omitted braids, which was inserted in paragraph 339—the one- under consideration. A comparison of the two acts indicates that Congress intentionally took braids out of the 45 per cent. paragraph, where it had been in 1894, and put the article into a paragraph imposing the higher rate of duty, and that it intended to impose the rate upon the articles, irrespective of the use to which they might be applied."

Under this decision, featherstitch braids, which were held in the Dieckerhoff Case to be dutiable as "braids" under the act of 1890, and which we have found were commercially known as "braids" at the time of the passage of the act of July 24, 1897, are, in our opinion, dutiable as assessed under the provisions of paragraph 339 of the act of July 24, 1897. The protests are accordingly overruled, and the decision of the collector in each case is affirmed.

Comstock & Washburn (Albert H. Washburn, of counsel), for importers.

Charles Duane Baker, Asst. U. S. Atty.

TOWNSEND, Circuit Judge. The decision of the Board of General Appraisers is affirmed, on the opinion of the Board.